# GOVERNMENT'S EXHIBIT

# 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-80028-Cr-CANNON/REINHART(s)

UNITED STATES OF AMERICA,

Plaintiff,

vs.

ALLEN JAMES SWEETENBERG,

Defendant.

_____/

## PLEA AGREEMENT

The United States of America (hereinafter "the United States" or "this Office") and ALLEN JAMES SWEETENBERG (hereinafter referred to as the "defendant"), hereby enter into the following agreement:

1.      The defendant agrees to plead guilty to Count 1 of the Superseding Indictment, which count charges the defendant with Knowingly and Intentionally Possessing with Intent to Distribute a mixture and substance containing a detectable amount of cocaine base, commonly known as "crack" cocaine, and cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), and 841(b)(1)(C). The defendant agrees that he is, in fact, guilty of that offense.

2.      In return for the defendant's agreement to plead guilty to Count 1 of the Superseding Indictment, agrees to move to dismiss Counts 2, 3, and 4 of the Superseding Indictment as to the defendant at time of sentencing.

3.      The United States further agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will make a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.   The United States, will not be required to make this motion and recommendation, or the non-binding sentencing stipulations set forth below, however, if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official; or, (4) attempts to withdraw his guilty plea after a finding by the Court that such was knowingly and voluntarily made.

4.      The defendant is aware that the sentence will be imposed by the Court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter

2

"Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a Pre-Sentence Investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense(s) identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed, or the Court's decision not to follow the parties' non-binding sentencing stipulations.

5.     **MAXIMUM PENALTIES:** As to Count 1 of the Superseding Indictment, the defendant understands and agrees he faces a maximum penalty of up to twenty (20) years' imprisonment, and a fine of up to one million dollars ($1,000,000), to be followed by a minimum three (3) year, to a maximum life[1] term of supervised release.

---

[1]   *See United States v. Sanchez*, 269 F.3d 1250, 1287-88 (11th Cir. 2001)(where statute does not otherwise specify a maximum sentence, maximum sentence is "life").

3

The defendant also understands and acknowledges that in the event he was not a United States Citizen, that his conviction for this offense would subject him to deportation or removal from the United States.

6.      The defendant further understand and acknowledges that, in addition to any sentence imposed under the preceding paragraph of this agreement, a special assessment in the amount of $100.00 will be imposed as to the count of conviction. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.  Payment may be either in the form of cashier's check or money order made payable to the Clerk of Court, Southern District of Florida, or in cash.  It is the prosecuting AUSA's duty to ensure that the special assessment has been paid at the time of sentencing.  If a defendant is financially unable to pay the special assessment, the defendant should be required to present evidence to the United States and the Court as to the reasons for her failure to pay.

7.      The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office"), and the defendant, reserve the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

8.      The defendant is aware that his sentence has not yet been determined by the Court.  The  defendant also is aware that any estimate of the probable sentencing

4

range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged above, that the defendant may not withdraw her plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

9.      This Plea Agreement constitutes the entire agreement and understanding between the United States and the defendant. There are no other agreements,

5

promises, representations, or understandings with respect to the defendant's guilty plea

except as set forth herein.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

Date: 07/20/2022                    By: _____
                                    JOHN C. McMILLAN
                                    ASSISTANT UNITED STATES ATTORNEY


Date: 7/19/22                       By: _____
                                    IAN J. GOLDSTEIN, ESQ.
                                    ATTORNEY FOR DEFENDANT


Date: 7/19/22                       By: _____
                                    ALLEN JAMES SWEETENBERG
                                    DEFENDANT

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-80028-Cr-CANNON/REINHART(s)

UNITED STATES OF AMERICA,

Plaintiff,

vs.

ALLEN JAMES SWEETENBERG,

Defendant.

_____/

## STIPULATED STATEMENT OF FACTS

### A.   Elements of Offense

By his signature below, the defendant understands and acknowledges that were this matter to have proceeded to trial, the United States would have had to prove the following elements beyond a reasonable doubt:

As to **Count 1** of the Superseding Indictment which charges the defendant with Possession with the Intent to Distribute Controlled Substances, to include a mixture and substance containing a detectable amount of cocaine base, commonly known as "crack" cocaine, and cocaine (powder cocaine), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), that:

(1)   The defendant knowingly possessed a controlled substance; and

(2)   The defendant intended to distribute the controlled substance.

To "intend to distribute" is to plan to deliver possession of a controlled substance to someone else, even if nothing of value is exchanged.

1

**B.    Statement of Facts**

Had this matter proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt, through admissible testimony and evidence, which the defendant agrees, by his signature below, are true and correct facts, and satisfy all the necessary elements of the offense of conviction referenced above and in paragraph 1 of the Plea Agreement:

1.     Officer Tyler Cox of the Riviera Beach Police Department would testify that on July 14, 2021, he was on patrol at in the vicinity of the 2500 block of Avenue M, in the City of Riviera Beach, Palm Beach County, Southern District of Florida, a high crime area he knew to have a reputation for violent crime (recent shootings) and narcotics sales, when at approximately 9:06 p.m., Officer Cox arrived at the stop sign located at the intersection of West 25th street and Avenue M.  After stopping, Officer Cox began to travel through the intersection, at which time he observed a Black Chevrolet Equinox bearing Florida tag QXEZ59 fail to yield to Officer Cox who had the right of way, and enter the intersection almost causing a collision with Officer Cox's marked Riviera Beach patrol vehicle.  Officer Cox also noted that the vehicle also appeared to have extremely dark, illegally tinted windows.

2.     After avoiding a collision with the black Chevrolet, the vehicle then immediately attempted to park in front of the residence located at 1089 West 25th Street, at which time Officer Cox activated his vehicle's emergency lights and siren and initiated a traffic stop on the vehicle. Officer Cox would testify he illuminated the rear window of the vehicle with his vehicle's spotlights, and could observe the silhouette of the driver and sole

occupant of the vehicle, subsequently identified as defendant Allen James SWEETENBERG, making furtive movements towards the vehicle's center console. Specifically, Officer Cox observed defendant SWEETENBERG turn his body to the right and leaned his body toward the center console.

3.      Defendant SWEETENBERG then attempted to exit the vehicle, but Officer Cox told him to remain inside of the vehicle. SWEETENBERG yelled to Officer Cox that he resided at the 1089 West 25th Street residence, which Officer Cox later determined to be false.

4.      As Officer Cox approached the vehicle, which was recorded on Officer Cox's Body Worn Camera (BWC), Office Cox would testify he could smell the distinct odor of freshly burnt marijuana emanating from within the vehicle. Officer Cox made contact with defendant SWEETENBERG and informed him about the above mentioned infractions, that is, failure to stop, failure to yield and illegal tint.  A query of the Florida Department of Motor Vehicles determined that defendant SWEETENBERG's driver's license status was currently in suspended status.

5.      Based on the smell of marijuana emanating from within the vehicle, once additional backup officers arrived, Officer Cox would testify he requested defendant SWEETENBERG to exit the vehicle (which was not registered in his name) so a search could be conducted for contraband, such as marijuana.

6.      Additional responding officers retrieved the keys from defendant SWEETENBERG, and conducted a search of the vehicle, at which time they located the following:

- In the center cup holder area, an ash tray was located with a burnt marijuana

3

cigarette.

- In the center console in front of the cup holder a "Bob Marley" marijuana grinder, with marijuana residue.

In the center console (right side arm rest area) officers located the following:

- A clear plastic bag containing a large circular crack cocaine "cookie" which Marlen M. Ramirez, a forensic chemist assigned to the U.S. Drug Enforcement Administration's Southeast Regional Laboratory, determined based on his laboratory analysis to consist of 12.26 net grams of cocaine base, commonly known as "crack" cocaine, which is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate (baking soda), and usually appearing in a lumpy, rocklike form.

- Two (2) clear plastic baggies containing smaller pieces of crack cocaine.

- Three (3) small plastic baggies containing powder cocaine which forensic chemist Ramirez determined consisted of a net weight of a 1.74 net grams of cocaine in powder form.

- A clear plastic bag containing numerous empty clear small plastic baggies

- A black digital scale.

    7.    Officer Cox would further testify (as corroborated by his BWC footage) that in addition to the illegal drugs in center console area of the vehicle defendant SWEETENBERG was driving were located several items of correspondence addressed to defendant SWEETENBERG, as well as a box of business cards bearing defendant SWEETENBERG's name.

    8.    Homeland Security Investigations (HSI) Task Force Officer (TFO) Christian Padilla, who has previously been admitted as an expert witness in the street level

distribution of controlled substances in the United States District Court for the Southern District of Florida, on at least two prior occasions, would testify that, based on his training and experience the quantity and packaging of the controlled substances recovered from the defendant's vehicle, an entire "cookie" of crack cocaine, together with the presence of numerous small empty clear plastic baggies, and a scale, are consistent with possession of said controlled substances for purposes of distribution and sale, and not consistent with possession of such controlled substances for purposes of mere personal consumption or use.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

BY: _____
JOHN C. McMILLAN
ASSISTANT UNITED STATES ATTORNEY

SEEN, AGREED AND APPROVED:

_____
ALLEN JAMES SWEETENBERG
DEFENDANT

_____
IAN J. GOLDSTEIN, ESQ.
ATTORNEY FOR DEFENDANT

Dated: __7/19/22__

5